UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TROY DEON LEWIS II,

                    Plaintiff,                              Case No. 2:23-cv-229

v.                                                          Honorable Maarten Vermaat

JEFFREY HOWARD et al.,

                    Defendants.

_____/

### OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate

order, Plaintiff has been granted leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c)

and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters

in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5, PageID.24.)

This case is presently before the Court for preliminary review under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial

review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131,

1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a

putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless

notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

2

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues AMF Warden Jeffrey Howard and AMF Nurse Practitioner Patricia Lewis. (ECF No. 1, PageID.2.)

Plaintiff alleges that on May 26, 2022, he was involved in a fight with another prisoner, which resulted in an injury to his right shoulder. Plaintiff requested health care but was transferred to Bellamy Creek Correctional Facility (IBC) shortly thereafter. Plaintiff kited health care at IBC

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

and was seen by many nurses who told him to drink water and take ibuprofen, which did not resolve Plaintiff's shoulder pain. (*Id.*, PageID.3–4.)

On February 2, 2023, Plaintiff was transferred to AMF, and, on May 1, 2023, he was seen by a nurse, who referred him to Defendant Lewis. (*Id.*, PageID.4.) On May 8, 2023, Plaintiff was seen by Defendant Lewis who asked Plaintiff about his injury and continuing pain. Defendant Lewis prescribed Diclofenac pills to be taken every twelve hours. (*Id.*)

Plaintiff took the pills as prescribed for about a month but did not experience relief from his shoulder pain. On June 6, 2023, Plaintiff told Defendant Lewis that he was still having a lot of pain in his shoulder and said that he wanted to have an x-ray. Defendant Lewis responded that they were not going to waste money on an x-ray and that his shoulder was fine. Defendant Lewis opined that Plaintiff had torn the supraspinatus in his right shoulder. (*Id.*) Plaintiff questioned how Defendant Lewis could know this when she had not run any tests or had any x-rays taken and Defendant Lewis responded that she was a professional and had been "doing this for years even before [Plaintiff] was born." (*Id.*, PageID.5.) Plaintiff explained that he was just trying to get help because he had been dealing with the pain for too long and Defendant Lewis stated that she would give him something to relieve his pain. (*Id.*)

As Defendant Lewis prepared to inject Plaintiff's shoulder with a steroid, Plaintiff began asking about what she was doing. Defendant Lewis responded that it was something to take Plaintiff's pain away and not to worry because she had performed such injections thousands of times. (*Id.*) Plaintiff apologized for offending Defendant Lewis, and she told him she did not need him to be sorry, but to just let her do her job. (*Id.*) Defendant Lewis injected Plaintiff's right shoulder with "40 mg/ml Depomedrol plus 1 ml Lidocaine." (*Id.*)

On June 7, 2023, Plaintiff noticed that his right arm and shoulder felt strange and that his shoulder was beginning to feel numb. (*Id.*) On June 17, 2023, Plaintiff kited healthcare complaining of numbness in his shoulder. (*Id.*) On June 20, 2023, Defendant Lewis visited Plaintiff and he told her that he was having intermittent numbness in his shoulder and was still dealing with pain in other areas of his shoulder. (*Id.*, PageID.6.) Defendant Lewis stated, "Look dude you asked for help and now you're complaining after I [gave] it to you. You're supposed to be a tough guy you're in prison, quit being a pussy." (*Id.*) Plaintiff protested that he was just trying to receive proper treatment and said that he would write a grievance on her if he did not receive proper treatment. (*Id.*) Defendant Lewis told Plaintiff to go ahead and write a grievance and stated that there was nothing more she could do for him. Defendant Lewis stated that Plaintiff would not be getting an x-ray, but that she would write another prescription for painkillers and that the numbness should go away in a few days. (*Id.*) Defendant Lewis then prescribed Meloxicam 15 mg to be taken once a day. (*Id.*)

On June 25, 2023, Plaintiff's shoulder went completely numb, and on June 26, 2023, Plaintiff wrote another healthcare kite. (*Id.*) On June 29, 2023, Defendant Lewis went to visit Plaintiff and told him that she had done everything she could for him, but nothing was good enough. Defendant Lewis further stated that Plaintiff was becoming a headache to her and her co-workers and that he should stop kiting. (*Id.*, PageID.7.) Plaintiff stated that he would write a grievance and file a lawsuit. (*Id.*) Defendant Lewis told Plaintiff to "f**k off," and walked away. (*Id.*)

Plaintiff filed grievances on June 29, 2023, and July 16, 2023. On August 4, 2023, Plaintiff kited the grievance coordinator about the lack of grievance responses. On August 28, 2023, Plaintiff filed a grievance against the grievance coordinator. (*Id.*) On September 14, 2023, Plaintiff

kited Defendant Howard and on September 21, 2023, while Defendant Howard was making rounds, Plaintiff told him about Defendant Lewis' unprofessional behavior. (*Id.*, PageID.7–8.) Defendant Howard stated that he would look into it. (*Id.*, PageID.8.) Plaintiff states that after another two weeks, he began writing the instant civil rights complaint. (*Id.*)

Plaintiff seeks compensatory, punitive, and nominal damages. Plaintiff also seeks declaratory relief and injunctive relief.

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Howard

Plaintiff fails to make specific factual allegations against Defendant Howard, other than his claim that Defendant Howard failed to conduct an investigation in response to Plaintiff's kite and verbal complaint. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

In addition, the Court notes that administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (custody officer entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989)). Plaintiff has failed to allege that Defendant Howard engaged in any active unconstitutional behavior. Accordingly, Plaintiff fails to state a claim against Defendant Howard.

### B.    Defendant Lewis

Plaintiff claims that Defendant Lewis violated his Eighth Amendment right to receive adequate medical care. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

8

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff

must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v.*

*Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Defendant Lewis saw Plaintiff for the first time almost one year after he injured his shoulder. Plaintiff had sought treatment at two other facilities before he arrived at AMF. He notes that he was never offered anything more than ibuprofen over that 8-month period. Then, once he

11

was housed at AMF, he waited another three months before he concluded that ibuprofen was not sufficient.

On Plaintiff's very first visit with Defendant Lewis, following an examination, she provided Plaintiff a prescription medication for his pain. A month later, Defendant Lewis saw Plaintiff again and injected a steroid/lidocaine mixture. Two weeks later, Defendant Lewis visited Plaintiff in his cell. After Plaintiff informed her that he continued to suffer pain, she prescribed another pain medication. Two weeks later Defendant Lewis saw Plaintiff again in his cell. According to Plaintiff, she refused to take any further action. Plaintiff does not suggest, however, that she discontinued his existing prescription for pain medication.

Over the eleven months of treatment before Plaintiff saw Defendant Lewis, he was given only ibuprofen. Over the seven weeks Nurse Lewis provided care, she saw Plaintiff four times and on three occasions provided additional treatment for his pain. Plaintiff's allegations regarding the treatment he received from Defendant Lewis does not support an inference she was deliberately indifferent to his medical need.

Plaintiff appears to disagree with Defendant Lewis' conclusion that he had torn the supraspinatus tendon in his right shoulder and asserts that Defendant Lewis should have ordered an x-ray to assess his injury, since the treatment provided had not resolved his pain. As the Supreme Court determined in *Estelle*:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . .

429 U.S. at 107 (footnote omitted); *see also Phillips v. Tangilag*, 14 F.4th 524, 537 (6th Cir. 2021) (noting that in *Estelle* the prisoner complained that he had been injured and continued to suffer back pain, that medical staff gave him only pain medication and muscle relaxers and did not even

order an x-ray, but those allegations did not suffice to state a claim at the pleading stage). Plaintiff's allegations regarding Defendant Lewis's failure to order an x-ray do not support an inference that she was deliberately indifferent to his medical need.

Plaintiff in this case, like the plaintiff in *Westlake*, clearly "received some medical attention and the dispute is over the adequacy of the treatment." *Westlake*, 537 F.2d at 860 n.5. As noted above, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 105–106. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* Although Plaintiff's allegations may be sufficient to support a state law claim for medical malpractice, Plaintiff's claims do not rise to the level of an Eighth Amendment violation.

Plaintiff also complains that Defendant Lewis did not behave in a professional manner. However, the manner in which Defendant Lewis spoke to Plaintiff did not violate his rights under the Eighth Amendment. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action,

statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

For all of these reasons, Plaintiff has failed to state an Eighth Amendment claim against Defendant Lewis.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    March 15, 2024                           /s/ *Maarten Vermaat*
                                                   Maarten Vermaat
                                                   United States Magistrate Judge